830 So.2d 591 (2002)
Keith Dewayne EVANS, Plaintiff-Appellant,
v.
Karen Porter EVANS, Defendant-Appellee.
No. 36,731-CA.
Court of Appeal of Louisiana, Second Circuit.
November 6, 2002.
*592 Robert S. Tew, Monroe, for Appellant.
Blackwell, Chambliss, Henry, Caldwell, Cagle & Camp, L.L.P by Sam O. Henry, III, West Monroe, for Appellee.
Before CARAWAY, PEATROSS and KOSTELKA, JJ.
PEATROSS, J.
This is an appeal from a judgment of the trial court ordering Keith Dewayne Evans to pay child support in the amount of $430.10 per month to Karen Porter Evans and finding that the best interest of the parties' minor child would be served by her attending private rather than public school. Mr. Evans appeals. For the reasons stated herein, we affirm.

FACTS
Keith Dewayne Evans and Karen Porter Evans were married on May 24, 1991, and Mr. Evans filed for divorce on June 26, 2001. The parties were awarded joint custody of their daughter, Katie, who was seven years old at the time the petition was filed. Ultimately, the parties entered into a joint custody plan and stipulated that Mrs. Evans would be Katie's primary domiciliary parent with extensive visitation in favor of Mr. Evans. The parties disagreed, however, on whether Katie should attend public or private school and on the amount of child support. Both parties live in Ouachita Parish. At the time of the filing of the petition, Katie was a second-grader at Swartz Elementary, the public school in the neighborhood where Mr. Evans lives. Mrs. Evans wanted to move Katie from Swartz Elementary to a private catholic school. Mr. Evans desired to have her remain at Swartz Elementary.
A hearing was conducted on the issues of child support and schooling on February 22, 2002. Evidence was presented by both parties; however, apparently due to technical problems, the transcript of the hearing contained in this record is incomplete. The following factual statements are gleaned from the written reasons of the trial court, as well as the parties' briefs on appeal.
At the hearing, Katie's teacher testified that she was an excellent student at Swartz Elementary. Mr. Evans testified that he was very involved as a room parent and had frequent contact with the school. All parties acknowledged that Swartz Elementary was a good school; however, there was testimony of problems with Ouachita *593 Junior High, which is the junior high in that particular school district. In fact, the parties had agreed when Katie began school at Swartz Elementary that she would eventually be moved to a private school to avoid going to Ouachita Junior High.
Mrs. Evans produced evidence at the hearing that she was remarrying Stephen Reuther, a co-worker of hers who had a daughter the same age as Katie. Mr. Reuther's daughter was attending a private catholic school near where Mrs. Evans and Mr. Reuther had purchased a home. Mrs. Evans testified that she did not want Katie to be transported across town, through congested Monroe traffic, to and from school everyday. In addition, Mrs. Evans testified that quality of education was most important and that the private school was much better than the Swartz feeder system. Mrs. Evans also expressed her opinion that it would be easier for Katie to make the transition to a new school in the second grade rather than to wait until the sixth grade.
After the hearing, the trial court issued written reasons for judgment finding it to be in Katie's best interest to attend private school. The court specifically found that Mr. Evans, according to his own testimony, would be able to stay involved with Katie's education at any school that she attended. The court further found significant that both parents wanted to avoid Ouachita Junior High and that Mr. Evans admitted that the transition would probably be easier on Katie in third rather than sixth grade. Mrs. Evans offered to pay the cost of the private school; and, therefore, the court ordered that she bear the cost, but that both parties agree on which private school Katie should attend.
The court also awarded child support in the amount of $430.10 per month. Specifically, the trial court found that the statutory amendments relating to "shared custody" do not apply in this case as this action was filed prior to the effective date of the amendment. In applying the guidelines, the trial court found that Mrs. Evans' gross monthly income was $5,235 and that Mr. Reuther earned a comparable salary. The court noted that Mr. Reuther pays $1,500 in child support for his daughter and that he would be sharing household expenses with Mrs. Evans, in particular, the mortgage note in the amount of $1,400 per month. In this regard, recognizing the discretion vested in the court to adjust Mrs. Evans' income in light of her new spouses' contribution to expenses, the court found that there was insufficient evidence before it to justify such an adjustment. Regarding Mr. Evans' income, the court found his gross monthly income to be $2,668 (representing his salary at the Ouachita Parish Sheriff's Office and an additional $2,000 per year for side jobs). Application of the child support guidelines yielded an award of $430.10, less a credit for daycare expenses of $142 per month paid by him.

DISCUSSION
Mr. Evans raises two assignments of error on appeal challenging the trial court's findings regarding the child support calculation and the schooling issue. We will address each in turn.
Child Support
Mr. Evans first argues that the trial court erred in failing to consider the number of days he has physical custody of Katie in making the child support award. He argues that La. R.S. 9:315.8(E) applies to this case and that the trial court should have adjusted the child support award accordingly. We disagree.
As the trial court pointed out, Act 1082, Legislative Acts of 2001, amended *594 the child support guidelines. Among the amendments, was La. R.S. 9:315.8(E)[1], on which Mr. Evans relies in arguing that the trial court erred in not adjusting the child support obligation based on the number of days he has physical custody of Katie. La. R.S. 9:315.8(E) does allow the court to adjust the child support obligation where the parent paying support has physical custody of the child more than 73 days per year. This provision, however, is inapplicable to the present case as it expressly provides that it applies to actions concerning child support filed after August 15, 2001. The present action was filed on June 26, 2001. In any event, Section (E)(2) provides that the court "may" order a credit to the child support obligation in such cases, which makes any such adjustment discretionary with the trial court and the abuse of discretion standard would apply. No abuse of discretion is apparent from this record.
Next, Mr. Evans argues that the trial court erred in not increasing Mrs. Evans' income for purposes of child support calculation due to the sharing of expenses with her new spouse, Mr. Reuther. Specifically, he asserts that the evidence showed that Mr. Reuther would be sharing the expense of the monthly mortgage payment on the couple's new whome, which was $1,400. Mr. Evans argues, therefore, that Mrs. Evans' monthly income for child support purposes should have been increased by one half of the mortgage expense or $700.
La. R.S. 9:315(C)(6)(c) provides:
(c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses. (Emphasis added.)
The language of the statute is permissive, not mandatory. As such, it is within the trial court's discretion to include or disallow alleged expense-sharing benefits. Such determination will not be disturbed absent an abuse of that discretion. Hutto v. Kneipp, 627 So.2d 802 (La.App. 2d Cir. 1993); Crockett v. Crockett, 575 So.2d 942 (La.App. 2d Cir.1991); Norred v. Norred, 591 So.2d 396 (La.App. 2d Cir.1991), writ denied, 592 So.2d 1319 (La.1992).
The trial court specifically addressed this issue. While the court noted that Mr. Reuther would share the mortgage note, it found insufficient evidence of Mr. Reuther's *595 actual income or "the extent to which it will actually be used to reduce Mrs. Evans['] actual expenses" to "substantiate a finding that Mr. Reuther's income is used directly to reduce Mrs. Evans' actual expenses."
In the case sub judice, the extent to which Mr. Reuther's income reduced Mrs. Evans' actual expenses is not disclosed by the record. As previously stated, there is no transcript of testimony on this issue from the hearing and the documentary evidence contained in the record on appeal does not reflect Mr. Reuther's income or contribution to Mrs. Evans' expenses. We cannot say, therefore, from this record that the trial court abused its discretion in failing to include Mr. Reuther's income in the child support calculations. See Hutto v. Kneipp, supra, and Mayo v. Crazovich, 621 So.2d 120 (La.App. 2d Cir.1993).
Public v. Private School
Mr. Evans submits that the trial court erred in finding that it was in Katie's best interest to attend a private school rather than to remain in Swartz Elementary. La. R.S. 9:315.6(B)(3) states, in pertinent part:
The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
With the designation of domiciliary parent status, the decision making authority discussed in Section (B)(3) above became vested in Mrs. Evans. Under this provision, Mrs. Evans' decision that Katie should be moved is presumed to be in the best interest of the child and Mr. Evans must overcome that presumption.
The written reasons for judgment indicate that the trial court heard testimony from both parties regarding the parents' respective reasons for desiring to have Katie attend the school of that parent's choice. Mrs. Evans suggested several factors which support her choice to send Katie to a private catholic school: (1) quality of education; (2) easier transition at third rather than sixth grade level; (3) prevent extensive travel time to and from school in congested traffic areas; (4) Katie's step-sister who was the same age would be attending the private school; and (5) Mrs. Evans' new home was in close proximity to the private school. Most of these factors were considered significant by the trial court, as was Mrs. Evans' offer to bear the full expense of the private school tuition and the parties' agreement that Katie would be moved to a private school after the sixth grade to avoid the public junior high school in her district.
On the other hand, Mr. Evans testified to his commitment to and involvement with Katie at Swartz Elementary. He is very involved as a room parent and spends a considerable amount of time at Katie's school. Perhaps most important to Mr. Evans was the fact that he lived very near Swartz Elementary, which made his involvement more convenient. Mr. Evans also testified, however, that he could and would be involved with Katie's education no matter what school she attended.
The trial court heard and weighed the testimony of both parties and agreed with Mrs. Evans that it would be in Katie's best interest to attend private school and ordered that the cost be borne solely by Mrs. Evans. We find that there exists a reasonable factual basis for the trial court's *596 conclusion; therefore, we find no manifest error in its ruling on this issue.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to Keith Dewayne Evans.
AFFIRMED.
NOTES
[1] La.R.S. 9:315.8(E) provides as follows:

E. "Joint Custody" means a joint custody order that is not shared custody as defined in R.S. 9:315.9.
(1) In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time.
(2) If under a joint custody order, the person ordered to pay child support has physical custody of the child for more than seventy-three days, the court may order a credit to the child support obligation. A day for the purposes of this Paragraph shall be determined by the court; however, in no instance shall less than four hours of physical custody of the child constitute a day.
(3) In determining the amount of credit to be given, the court shall consider the following:
(a) The amount of time the child spends with the person to whom the credit would be applied.
(b) The increase in financial burden placed on the person to whom the credit would be applied and the decrease in financial burden on the person receiving child support.
(c) The best interests of the child and what is equitable between the parties.