954 So.2d 842 (2007)
Michelle Repass BINGHAM, Plaintiff-Appellee
v.
Donald Jason BINGHAM, Defendant-Appellant.
No. 42,140-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
*843 Jill B. Goudeau, Monroe, for Appellant.
Stephen A. Jefferson, Monroe, for Appellee.
Before BROWN, GASKINS, and LOLLEY, JJ.
BROWN, Chief Judge.
The parties in this domestic action, Jason and Michelle Bingham, divorced in 2000. They had two daughters, Harmony, age three, and Vanessa, age two. The parents agreed to shared custody with the mother having the two children from morning to evening and the father from evening to morning. No child support was to be paid by either party. A judgment was signed to that effect. In 2003, because the girls had started school, Jason found the daily exchange unworkable. He approached Michelle to modify the arrangement from a daily exchange to alternating weeks and she agreed. No court order modifying the original custody plan was sought or obtained. In 2004, Michelle filed this action to modify the original judgment of custody and for child support. Jason responded by urging the court to "recognize and adopt the plan (alternating weeks) which is in effect, and has been agreed upon by the parties." After considering the best interest of the children, the trial court modified the original custody judgment to award Michelle physical custody during the school year and Jason physical custody during the summer break subject to specified visitation. Michelle was also awarded child support.
Jason has appealed seeking reversal of the trial court's custody award and its order for him to pay $860 per month in child support. For the reasons assigned below, the judgment of the trial court is hereby affirmed.

Discussion
Custody
La. C.C. article 131 provides that custody should be awarded based on the best interest of the child. Joint custody is preferred unless it is shown by clear and convincing evidence that sole custody is in the best interest of the child. La. C.C. article 132. Parents have the right to contract with each other as to custody and control of their children. Even so, the best interest of the child is the overriding test whether in initially setting or modifying custody. La. C.C. art. 132 provides in part:
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. (Emphasis added).
It is precisely for the reason that the child is not represented that the Louisiana Civil Code injects a duty on the court to protect the child's interest. Courts, however, are universally willing to decide questions of custody based on the agreement reached by the parents. When custody is in conjunction with or after a divorce action, the child is not usually represented and unless there have been some proceedings in court, the trial judge has no information or knowledge concerning the child's best interest. *844 As in this case, the judge simply signs as a judgment the custody implementation plan prepared by the parties.
Because of concerns with judicial economy and stability in custody arrangements, the jurisprudence has added a change of circumstance rule in actions to modify or change an initial custody judgment. If there is an original award of custody, without litigation of the child's best interest, i.e., a stipulated rather than a considered judgment, then a request to modify custody requires two issues to be determined in chronological order: (a) whether there has been a material change in circumstances since the original award; and if so, (b) whether the best interest of the child would be served by a modification or change in custody. Without a material or significant change in circumstances, there can be no modification of the custody award. Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731; Masters v. Masters, 33,438 (La.App. 2d Cir.04/05/00), 756 So.2d 1196, writ denied, 01-3096 (La.12/07/01), 803 So.2d 975.[1]
In his appeal, Jason questions the trial court's finding of a material change in circumstances. In this case, however, both parents sought to modify the original custody plan which provided for exchange of the children on a daily schedule. The father requested that the court adopt the arrangement that the parties were actually following while the mother asked the court to impose a more "traditional" custody arrangement. Thus, both parties sought modification of the original custody judgment. Under these circumstances, we find that there is no permanent, court-sanctioned custody plan and that this case is in the posture of an initial custody determination where proof of a change in circumstance is not required.[2]
It is undisputed that both parties were remarried, Michelle to Michael Smith and Jason to Melissa Bingham. In addition to Harmony and Vanessa, Michelle has one daughter, Rachel, with her new husband. Rachel was three years old at the time of the trial. Jason and Melissa also have a daughter, Kaitlin. Additionally, Melissa has a son, Gavin, from a previous relationship whom Jason has adopted.
Both Harmony and Vanessa refer to Melissa Bingham as "mom" as per Melissa's instructions, supposedly so as not to confuse Kaitlin. Both girls testified that they know that Melissa is their stepmother.
In the instant case, Michelle's request for a school-year based custody plan focused in part on the fact that she was no longer employed and could provide a more stable environment for the children during the school year. Her request was also *845 based in part on the deleterious effects of the existing custody arrangement due to the lack of communication between herself and Jason. She questions Jason's new wife's unwillingness to respect the boundaries of a stepparent.
The trial court agreed with Michelle's allegation that communication between the parties is less than ideal. For example, we concur with the trial court that the failure of Jason and his wife to communicate with Michelle before cutting the children's hair was insensitive. More significant, however, is that the exchanges of the children took place at a convenience store where the children would go to the restroom and change out of the clothes they arrived wearing and into clothes provided by the parent picking them up. This practice was instituted at the request of Jason because of his concern that he might not get back the clothes the children were wearing when he dropped them off with their mother. The children in testimony to the trial judge noted this inconvenience.
Further, Jason admitted that he called the Office of Family Services to inquire about whether certain foods being provided by Michelle for breakfast were appropriate for children. This triggered an investigation by the OFS which was closed as a "false call."
The children were called to testify by their father, but did so outside the presence of their parents. Both are excellent students and stated that they like the seven-day rotation schedule and did not want to spend extended periods of time away from their father. The trial court noted that the girls brought written notes with talking "points." It was Jason Bingham who insisted on the girls testifying, and the court believed that he had coached the girls concerning their testimony.
After considering all of Jason's arguments on this issue, along with the record before us and the applicable law, we cannot find an abuse of the trial court's discretion. While it is not established that the home of either parent is deleterious to the children, and in fact the opposite appears to be the case, granting Michelle Smith primary custody during the school year and Jason Bingham primary custody during the summer is a reasonable solution to the communication problems between the parents. Further, the parents live close enough to each other to allow Jason convenient visitation with the children during the school year and full opportunity to join in school and extracurricular functions. Accordingly, we find no abuse of the trial court's discretion or manifest error in the modification of the custody arrangement.
We also reject Jason's argument that the trial court applied a maternal preference standard. In its reasons for judgment, the trial court made the following observation:
The custody plan the court will order, as detailed below, is a more traditional school-year based custody plan, where the children will be in the primary custody of their mother during the school year and in the primary custody of the father during the summers.
The phrase "more traditional" references the fact that the plan decided by the court is governed by the school schedule. In this case, Michelle is the stay-at-home parent and available for all the issues confronting elementary school-aged children. Jason, on the other hand, is at work when the children are in school and returning home from school.
Visitation Schedule
Alternatively, Jason argues that the holiday visitation schedule implemented by the trial court should be modified to ensure that each party has an equal amount of time during the holidays, and he also urges that he should be awarded more visitation during the school year.
*846 The holidays of Thanksgiving, Christmas, and spring break are divided into two periods with each parent receiving in alternating years either the first or the second period of each holiday. Accordingly, while Jason may have received the shorter part of the Christmas holidays one year, he will receive the longer portion the following year. That being the case, in the long run each parent will receive approximately the same amount of time with the children during their school breaks.
Jason also argues that he should be given more visitation during the school year, citing this court's opinion in Collins v. Collins, 36,629 (La.App. 2d Cir.10/23/02), 830 So.2d 448, in which we amended a visitation custody schedule similar to the one in the present case by increasing the father's school-year visitation. In Collins, supra, the facts presented allowed this court to conclude that the parents showed a willingness to foster a close and loving relationship between their daughters and each other and demonstrated that they could work together without acrimony for the benefit of their children's care and well-being. That is not the case here. To the contrary, the record supports the trial court's finding that a communication breakdown existed between the parents that could potentially harm the children. To grant Jason's request for more visitation during the school year could exacerbate the very communication problems the trial court intended to ameliorate.
Child Support
Since we have not amended the judgment to provide for shared custody, we need not address Jason's assignment of error regarding the calculation of child support under La. R.S. 9:315.9. He has, however, also assigned error to the amount of income the trial court imputed to Michelle Smith in its calculation of the child support obligation.
La. R.S. 9:315(C)(5)(c) provides:
(c) The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses. (Emphasis added.)
The language is permissive, not mandatory. As such, it is within the trial court's discretion to include or disallow alleged expense-sharing benefits and its determination will not be disturbed absent an abuse of that discretion. Evans v. Evans, 36,731 (La.App. 2d Cir.11/06/02), 830 So.2d 591. In the present case, Jason did not present evidence to demonstrate the amount of Michelle's husband's income that was used to reduce her actual expenses. Thus, we are unable to find any abuse of the trial court's discretion.
Pursuant to La. R.S. 9:315.11, if a party is voluntarily unemployed or underemployed, child support shall be based on a determination of income earning potential, unless the party is mentally or physically incapacitated. Gardner v. Gardner, 41,655 (La.App. 2d Cir.12/27/06), 946 So.2d 321.
The parties' children are in elementary school and the fact that Michelle would be at home was a factor in making her the primary domiciliary parent during the school year. Prior to her decision to stay home with the children, Michelle's work history was inconsistent. Although not her last employment, Michelle had worked with State Farm in Columbia, Louisiana, making $12 an hour plus commission. Her job required a long commute, over 30 miles each way. There was no showing of what work was available where she currently lived. The trial judge imputed to her an *847 earning potential of $8 per hour. We find no abuse of discretion in the amount of income imputed to Michelle by the trial court for purposes of child support calculations.
Jason's argument that the structure of the child support payments should be modified to allow him to pay a reduced amount during the year with the difference to be made up when he receives his year-end bonus is unpersuasive. The need to cover the recurring expenses associated with the raising of children outweighs Jason's concerns regarding the timing of his compensation. As the trial court pointed out in rejecting Jason's motion for new trial on this issue, he can set aside that portion of his year-end bonus which will be necessary to pay his child support obligation during the following year.

Conclusion
For the foregoing reasons, the trial court judgment of September 14, 2006, is affirmed. Costs of this appeal are to be borne by defendant, Donald Jason Bingham.
AFFIRMED.
NOTES
[1] In custody disputes seeking modification of a considered or litigated decree, the standard set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), requires the party seeking the change to prove that the continuation of the present custody is so deleterious to the child as to justify modification or to prove by clear and convincing evidence that any harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child.
[2] We note that the trial court found that the children's circumstances had changed in that they were now in school; however, they had been in school for more than three years before this matter was heard. The court also found the mother's circumstances had changed in that she had remarried, had another child, and no longer worked. As a stay-at-home mom, she would be there when the children were let out of school.

An inflexible application of the change in circumstance rule could lock children into a bad situation when the parties stipulate custody to an unsuitable parent or in an unsuitable manner. In this case, custody has remained unchanged but inadequate since its inception. The trial court's pragmatical approach provided an adequate solution.