945 So.2d 242 (2006)
Ronnie McWILLIAMS, Plaintiff-Appellee,
v.
Troy COURTNEY, Defendant-Appellant.
No. 41,725-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*243 The Bernoudy Law Firm, by Angela Michelle Smith, for Appellant.
Edward Charles Jacobs, Springhill, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
DREW, J.
Troy Courtney seeks reversal of the trial court's judgment awarding $1,270.00 in general damages and $500.00 in attorney fees and costs to Ronnie McWilliams. For the following reasons, the judgment of the trial court is affirmed.

FACTS
In November 2001, Ronnie McWilliams and Troy Courtney entered into an oral agreement under which McWilliams leased a wood splitter and trailer to Courtney so that Courtney could cut, haul, and sell firewood. The splitter and trailer remained in Courtney's possession for four to five months.[1] In June 2003, McWilliams, through his attorney, presented Courtney with a demand letter for $1,500.00. Courtney refused to pay the bill.
On June 22, 2004, after making amicable demand, McWilliams filed a suit on open account for $1,500.00 plus attorney fees and costs against Courtney. In his answer to the petition, Courtney denied that he owed the debt on the basis that the parties' agreement only called upon Courtney to cut firewood for McWilliams, which Courtney alleged that he had done. His answer further claimed that he had four witnesses to the agreement.
The matter came for trial on March 23, 2006. McWilliams testified that he and Courtney had entered into the rental agreement at McWilliams' place of business, the Porterville Country Store. According to McWilliams, Courtney agreed to pay $40.00 per day for use of the wood splitter and $30.00 per day for use of the trailer. He testified that over the next several months he kept track of the days on which his equipment was being used by driving past Courtney's house. If the equipment was in use, he would charge Courtney for it, but if it was sitting idle, he would not charge Courtney for it. As to Courtney's claim that McWilliams had been provided four cords of firewood in return for the use of the equipment, McWilliams testified that Courtney had only delivered a load of unmarketable limbs to his house.
Without any objection from Courtney, who was not represented by counsel at the time, McWilliams introduced a copy of the ledger notes where he kept track of the use of his equipment. The notes reflect a *244 total amount due and owing of $1,470.00. However, in his testimony, McWilliams admitted that the starting balance of $200.00 did not reflect accurate record keeping but merely an estimate of what he "figured" Courtney owed when he began to keep track of his equipment's use. Also offered and admitted into evidence without objection was a copy of the demand letter sent to Courtney by McWilliams' attorney.
The court then heard testimony from Kenneth Coleman, who was with Courtney on the day the arrangement between the parties was made. Coleman indicated that he only heard McWilliams offer to make Courtney a "deal," but he did not hear anything regarding the terms of that deal. He confirmed that he had been with Courtney when he made deliveries of two cords of firewood to both McWilliams' home and the home of McWilliams' son. There was no testimony as to when these deliveries took place.
Courtney testified that the original agreement was proposed by McWilliams and that the only request McWilliams had made in return for Courtney's use of the equipment was that he provide McWilliams and McWilliams' son each with two cords of firewood. Courtney testified that he cut and delivered the wood as agreed and that there was never any discussion regarding the payment of money for the rental of the equipment. On cross-examination, he asserted the sales price for a cord of firewood was $225.00. When asked the whereabouts of the four witnesses to the agreement identified in his answer, he indicated that Coleman was one of them, two others were in prison, and the fourth was in Houston.
After hearing the testimony, the trial court rendered judgment awarding McWilliams $1,270.00 on the open account, and $500.00 in attorney fees and court costs. The court stated that it did not believe Courtney's testimony as to the nature of the agreement and therefore awarded McWilliams the amount reflected on the invoice minus the $200.00 estimated balance. A judgment to that effect was signed on June 30, 2006. The instant appeal followed.

DISCUSSION
On appeal, Courtney makes two assignments of error. First, he contends that the trial court erred in allowing hearsay into evidence in the form of McWilliams' ledger notes regarding the dates that his equipment was in use by Courtney. Second, Courtney argues that the trial court was manifestly erroneous in concluding that the terms of the agreement between the parties were those testified to by McWilliams.
Evidentiary Issue Regarding McWilliams' Ledger Notes
At trial, a party must make a timely objection to evidence that the party considers inadmissible and must state the specific ground for the objection. La. C.E. art. 103 A(1); La. C.C.P. art. 1635. Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. See Bryant v. Newman, 39,437 (La.App.2d Cir.4/20/05), 900 So.2d 343; and Zellinger v. Amalgamated Clothing, 28,127 (La.App.2d Cir.4/3/96), 683 So.2d 726. Furthermore, the reasons for the objection must be brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. See Jeansonne v. Bosworth, 601 So.2d 739 (La.App. 1st Cir. 1992), writ not considered, 614 So.2d 75 (La.1993). An appellate court will therefore not consider a ground for objection different from the grounds raised at trial. Tutorship of Price v. Standard Life Ins. Co., 569 So.2d 261 (La.App. 2d Cir.1990), writs denied, 572 So.2d 91, 92 (La.1991).
*245 Courtney did not raise the objection of hearsay, now raised on appeal, when the ledger notes were introduced. If Courtney could be deemed to have voiced any opposition to the notes, it was on the basis that its contents were not accurate. Courtney's failure to contemporaneously object to the admission of the exhibit during trial on the basis of hearsay constitutes a waiver of his right to complain on appeal that admission of the exhibit was prejudicial error. This assignment of error is without merit.
Erroneous Finding of Fact
Courtney argues that the factual inconsistencies in the evidence support a finding that the trial court manifestly erred in rendering judgment in favor of McWilliams. Specifically, Courtney cites the discrepancy in the amount claimed by McWilliams and the amount ultimately awarded, the lack of an explanation as to why McWilliams and his son were provided firewood, and the lack of specificity as to the terms of the contract.
Whether or not an oral contract has been confected between the parties is a finding of fact and, as such, is subject to the manifest error standard of review. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Dept. of Transp. and Development., 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.
McWilliams testified that the parties had agreed to the rental of his wood splitter and trailer for $40.00 per day and $30.00 per day, respectively. He further testified as to how he tracked the use of his equipment by noting the days it was not sitting idle at Courtney's property. McWilliams explained that the reason he did not charge for the rental on those days was because if he had wanted to use the equipment, it was available to him. He also testified that the beginning balance of $200.00 on his ledger was strictly an estimate and not a reflection of actual knowledge as to Courtney's use of the equipment. This evidence not only explains the alleged discrepancy between the amount awarded and the amount originally claimed, but supports the trial court's finding that McWilliams was owed $1,270.00 for the rental of his equipment.
Courtney's argument that the agreement testified to by McWilliams fails to explain why Courtney delivered four cords of firewood to McWilliams and his son is also without merit. Courtney's argument assumes that the trial court believed that such deliveries had been made. We see no indication of such a finding in the record. McWilliams admitted to receiving only one pickup truckload of what he considered to be unmarketable wood. Furthermore, even if such a finding had been made, Courtney's suggestion that it constitutes irrebuttable evidence of the nature of the agreement is unconvincing. Courtney's actions in this regard could *246 have been motivated by gratuity or conscience since he was in possession of McWilliams' wood splitter during the winter months. That the record does not evidence what other motive there might have been is of no moment. McWilliams did not acknowledge that the delivery of four cords of firewood was made. Accordingly, he was not likely to offer an explanation for an event he did not acknowledge ever occurred in the first place.
Lastly, Courtney's complaint as to the lack of specificity in the contract also fails. A lease is a synallagmatic contract by which one party, the lessor, binds himself to give the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. La. C.C. art. 2668. The essential elements of a lease are the thing, the price (rent), and consent of the parties. Southern Treats, Inc. v. Titan Properties, L.L.C., 40,873 (La.App.2d Cir.4/19/06), 927 So.2d 677, writ denied, XXXX-XXXX (La.9/15/06), 936 So.2d 1271. The form of a lease may be written or verbal. La. C.C. art. 2681; Southern Treats, supra.
Courtney's complaints as to the absence of a term, payment arrangements, and a proper method of accounting for his use are inapposite. Courtney has not cited and we are not aware of any authority supporting the proposition that a lease agreement must contain specifics as to the accounting method to be used or as to the manner in which payment will be made. Courtney offered no evidence to contradict the assertion that he was using McWilliams' equipment on the days alleged. Accordingly, he will not now be heard on appeal to complain that McWilliams' method for determining it was unreliable.
As to the absence of a lease term, the law clearly provides that for a lease agreement wherein the parties have failed to agree as to the duration of the term, the duration is supplied by law. See La. C.C. art. 2678. In the case of the lease of movables, the term is day to day, unless the rent is fixed by longer or shorter periods. La. C.C. art. 2680. Accordingly, we find no manifest error in the trial court's findings.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby AFFIRMED. The costs of this appeal are to be borne by appellant.
NOTES
[1] A local constable, Deputy Fig Newton, recovered the equipment on behalf of McWilliams.