JUDE G. GRAVOIS, Judge.

\sINTRODUCTION

In this 'child custody matter, Curtis Manley, appellant and father of the minor child Aalijah Máñley, appeals the trial court’s July 30, 2015 judgment that granted the parties joint' custody of Aalijah and designated Chai-lita Coleman, appellee and mother of the minor child, as domiciliary parent, subject to specific periods of physical custody in favor of Mr. Manley, including holiday and stmmer vacation custody schedules. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

Ms. Coleman and Mr. Manley met while serving in the U.S. Army. They had a relationship together from which the minor child Aalijah was born on May 11, 2006. While they lived together for a time, they never married. Ms. Coleman resigned from the Army and returned to Marrero, Louisiana, her home, sometime around 2008; Mr. Manley, who was from Virginia and who is now a sergeant, remained in the Army, and at the time of these proceedings was stationed at Fort | aPolk in Leesville, Louisiana, where he resides when he is not. deployed overseas.[1] In 2009, Mr. Manley, married Kirsten Manley, with whom he presently resides, while Ms. Coleman currently is not married.
Relevant to these proceedings, the trial court signed a consent custody judgment on September 12, 2013 that awarded joint custody of Aalijah to the parties, with Ms. Coleman being designated as domiciliary *398 parent, and.with specific “unsupervised periods of physical custody” being granted to Mr. Manley.
•On October 30, 2013, Mr. Manley filed a rule to modify custody and relocate, requesting to be designated as the domiciliary parent of the minor child based on Ms. Coleman’s “pattern of domestic violence” towards himself and his .wife, Kirsten, in the presence of the child. Specifically, Mr. Manley alleged that Ms. Coleman engaged in physical altercations with Mr.. Manley and his. wife at two particular visitation exchanges, one. at Ms. Coleman’s grandmother’s house in Marrero, where Ms. Coleman and the child lived at the time, on July 5, 2013, and the other at a gas station in Lafayette, Louisiana, on August 31, 2013. Both times, Mr. Manley called the police, and Ms. Coleman was cited for simply battery. In his rule, Mr. Manley specifically asserted that he was entitled to the sole and permanent custody of the minor child “pursuant to the provisions of the Post [-] Separation Family Violence Relief Act,” La. R,S. 9:361, et seq., and La. C.C. art. 131, et seq.
The domestic commissioner heard Mr. Manley’s rule in December of 2013 and denied it, recommending that Ms. Coleman retain domiciliary custody. Mr. Manley thereupon filed an objection to the domestic commissioner’s ruling, which objection was heard by the trial court and was “sustained” by judgment rendered Hand signed on April 10, 2014.[2] Apparently at or about that time, Mr¡ Manley was also awarded domiciliary custody of the child, although the record contains no judgment, order, ruling, or minute entry - to that effect.[3] The parties appear to agree that the judge’s order allowed the child to finish the school year with her mother and ordered that' custody be transferred to Mr. Manley on May 22, 2014, although Mr. Manley in fact picked the child up at her school on May 19, 2014, three days early, in violation of the order.[4] Later that month, Mr. Manley was deployed to Afghanistan for approximatély six months. The child remained with Mrs. Manley, her stepmother, during this time, except for periodic unsupervised visitation exercised by Ms. Coleman.
On July 15, 2014, Ms. Coleman filed a motion to modify custody and visitation, alleging a change in circumstances in that she had, enrolled in and completed an “anger management course.” Attached to Ms. Coleman’s motion was a certificate dated July 7, 2014 certifying completion of “Cognitive Processing Therapy” with the Veterans Health Administration. Ms. Coleman, her attorney, and Mr. Manley’s attorney appeared for a hearing on July 31, 2014. In a “Corrected Judgment” dated September 8, 2014, Ms. Coleman was granted unsupervised visitation privileges, but all custody matters were stayed because of Mr. Manley’s overseas deployment. *399 [5] Counsel for Mr. Manley did not object to the award of unsupervised visitation privileges to Ms. Coleman.
|fiMs. Coleman’s motion to modify custody and visitation was set for a hearing on January 15, 2015, as wás Ms. Coleman’s motion for contempt and Mr. Manley’s motion for costs. Ms. Coleman, Mr. Manley (who had returned from deployment), and Mrs. Manley testified, as well as Ms. Coleman’s grandmother. At this hearing, Ms. Coleman submitted certification- of her completion of- a second treatment course, this one involving “anger management” with Sims Social Services, dated July 22, 2014. After ruling on matters not subject to this appeal, the court deferred ruling on the motion for custody change and ordered that a custody evaluation be performed by Karen Van Beyer, Ph.D, The evaluation was duly performed and Dr. Van Beyer submitted a report to the court dated June 10, 2015.
The matter was again set for a hearing on July 30, 2015, where the parties again testified and Dr. Van Beyer’s report was entered into evidence. The trial court is-sued a written ruling that same day, granting the parties joint-custody of the-minor child and designating Ms. Coleman as domiciliary parent as she had- prayed. Specific periods of physical custody were ordered in favor of Mr. Manley, including holiday and summer vacation custody schedules. The ruling specifically ordered that Mrs. Manley not be present at- any exchanges. Mr. Manley timely filed a motion for appeal- on August 3, 2015. This appeal followed.
On appeal, Mr. Manley argues four assignments of error:
1) The trial court abused its discretion by finding that it was in the best interest of the minor child to designate Ms. Coleman as domiciliary parent;
2) The trial court erred in designating Ms. Coleman, as domiciliary, parent without proper evidence that she completed a treatment program and .. that she was not abusing alcohol or psychoactive, drugs;
t¡3) The trial court committed error of law in its application of the Bergeron standards in modifying custody and designating. Ms. Coleman as the domiciliary parent; and
4) The trial court committed legal error' in allowing relocation of the minor child to New Orleans without notice of relocation, a motion to relocate, or any consideration of the relocation factors.

LAW AND ANALYSIS

As this Court recently held in Martinez v. Lagos, 13-887 (La.App. 5 Cir. 05/21/14), 142 So.3d 231, 234, each child custody case must be viewed in light of its own particular set of , facts and circumstances with the .paramount goal of reaching a decision that is in the best interest of the children. On appellate review, the determination of the trial court, in establish *400 ing custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Martin v. Martin, 11-1496 (La.App. 3 Cir. 5/16/12), 89 So.3d 526; Bridges v. Bridges, 09-742 (La.App. 5 Cir. 2/9/10), 33 So.3d 914, 918.
ASSIGNMENT OF ERROR NUMBER TWO[6]

Burden of proof under La. R.S. 9:364

In his second assignment of error, Mr. Manley argues that the trial court erred in awarding domiciliary custody to Ms. Coleman without proper evidence that she completed a treatment program and without evidence that she was not abusing alcohol or drugs, as mandated by La. R.S. 9:364.
At the time this matter was filed, La. R.S. 9:364 provided, in pertinent part:
A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs | scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent’s participation as a custodial parent because of the other parent’s absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
⅜ 4*
C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent’s participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child’s best interest.
La. R.S. 9:362 provided, at the time this matter was filed, in pertinent part:
(7) “Treatment program” means a course of evaluation and psychotherapy designed specifically for perpetrators of family violence, and conducted by licensed mental health professionals.
Ms. Coleman first presented evidence of her completion of a therapy course with the Veterans Health Administration as an attachment to her motion to modify custody and visitation filed on July 15, 2014. At the hearing on July 31, 2014, the trial court found that Ms. Coleman had fulfilled her burden of proof regarding the statute and awarded her unsupervised visitation *401 with Aalijah, which was memorialized in the Corrected Judgment dated September 8, 2014. Counsel for Mr. Manley did not object to the unsupervised visitation.
At the hearing on January 15, 2015, which pertained to Mr. Manley’s rule for costs, Ms. Coleman’s motion for contempt, as well as her motion to modify custody and visitation, Ms. Coleman introduced two certificates indicating completion of anger management therapy: the July 7, 2014 certifícate that was attached to her motion certifying her completion of “Cognitive Processing Therapy” with the Veterans Health Administration, and also a certificate dated July 22, 2014 from Victor Sims certifying her completion of the “Anger Management |sProgram” provided by Sims Social Services. Ms. Coleman testified about the courses’ lengths and how many sessions she attended. She stated affirmatively that she told Mr. Sims that she was required to complete'the anger management course because of this custody matter. She also stated that the Veterans Health program entitled “Cognitive Processing Therapy” concerned anger management and counseling for post-traumatic stress disordbr. The court did not change custody at this time, but rather ordered that a custody evaluation be done by a court-appointed expert.
Upon review, under the particular facts and circumstances of this case, we find that the trial court did not abuse its broad discretion in finding that the testimony and documents presented by Ms. Coleman concerning her said anger management treatment sufficiently fulfilled her burden of proof under La. R.S. 9:864.[7] Accordingly this assignment of error is without merit.
Further, the record' is clear that the trial court did not order the change of custody solely based upon evidence of Ms. Coleman’s completion of the anger management treatment programs. Rather, in January of 2015, the trial court ordered that an independent custody evaluation be done by Dr. Van Beyer, whose report was entered into evidence at the hearing on July 31, 2015, and which is relevant to Mr. Manley’s first assignment of error, discussed infra.

ASSIGNMENT OF ERROR NUMBER THREE

Application of the Bergeron standard
In his third assignment of error, Mr. Manley argues that the trial" court committed error of law in its application of the Bergeron[8] standard in modifying [ flcustody and designating Ms. Coleman as domiciliary parent. Mr. Manley argues that the order of April 2014 awarding him domiciliary custody was a “considered decree” and as such, Ms. Coleman bore the heavy burden of proof, as delineated in Bergeron, to overturn the custody award.
A “considered decree” is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Rodriguez v. Wyatt, 11-82 (La.App. 5 Cir. 12/12/11), 102 So.3d 109, 114, citing Silbernagel v. Silbernagel, 06-0879 (La.App. 5 Cir. 4/11/07), 958 So.2d 13, 17. Once a considered decree has been rendered, the proponent of the change *402 bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Id., citing Bergeron, supra at 1200.
Upon review, we find that the heavy burden of Bergeron does not apply in the instant case because the award of domiciliary custody to Mr, Manley in April of 2014 that Ms. Coleman moved to modify was not a “considered decree.” Rather, Mr. Manley was granted custody under the Post-Separation Family- Violence Relief Act, La. R.S. 9:361, et seq. At the original hearing on January 7, 2014 before the domestic commissioner, the commissioner received testimony only regarding the alleged incidents of family violence between Ms. Coleman and Mr. and Mrs. Manley. The commissioner found that under the applicable statute defining family violence, only the incident in Lafayette met the statutory definition. The commissioner denied Mr. Manley’s motion for sole custody under La. R.S. 9:361, et seq. The commissioner did not receive testimony or evidence regarding the factors found in La. C.C. art. 134 for the' award of custody.
110Mr. Manley filed a timely objection to the commissioner’s ruling, which was heard on April 10, 2014 by the trial judge, who issued a ruling sustaining Mr. ‘ Manley’s'objection. ' At that hearing, as in the hearing before the commissioner, the only evidence presented was testimony regarding the allegations of family violence; evidence was’ not presented regarding the fitness of either party to have custody as per the factors in La. C.C. art. 134 and Bergeron. Accordingly, the judge’s aforementioned order granting Mr. Manley custody following the April 10, 2014 judgment sustaining Mr. Manley’s objection to the commissioner’s ruling was not a “considered decree.”[9]
The Third -Circuit reached a similar conclusion in Cloud v. Dean, 15-1050 (La.App. 3 Cir. 1/13/2016), 184 So.3d 235. Similar to the instant case, the court of appeal found that a custody award pursuant to the Post-Separation Family Violence Relief Act was not a considered decree when the evidence presented at the hearing pertained only to establishing whether Mr. Cloud was a parent with a history of violence. The court held that:
Because the May 20, 2014 judgment was based on a presumption prohibiting [Mr.] Cloud from being awarded custody and limited evidence to establish the facts requiring the presumption, rather than an analysis of “all relevant factors” for determining the best interest of the child, we find that the trial court did not err when it declined to treat the May 20, 2014 custody judgment as a “considered decree” which would subject [Mr.] Cloud’s rule for modification of custody to the heighted burden of proof set forth in Bergeron.
Cloud v. Dean, supra, at p. 7, 184 So.3d at 239.
If a judgment is not a considered decree, the Bergeron “heavy burden” rule does not apply. In' such cases, a party seeking to modify the custody arrangement must prove a change in circumstances and that the new custody arrangement would lube in the best interest of the child. Evans v. Terrell, 27,615 (La.App. 2 *403 Cir. 12/06/95), 665 So.2d 648, 650-651. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER ONE

Best interest of the minor child

In his first assignment of error, Mr. Manley argues that the trial court abused its discretion by finding that it was in the best interest of the minor child to designate Ms. Coleman as domiciliary parent. In brief, Mr. Manley argues that “[m]ost of the [Article] 134 factors” favored him, that Ms. Coleman’s “multiple incidents of domestic violence” were not deemed relevant by the trial court, that the trial court dismissed the fact that Ms. Coleman’s cousin, who was allegedly convicted of possessing a sawed-off shotgun, was permitted to live .with the minor child, and that the child had better grades and attendance at school when domiciled with Mr. Manley.
As previously noted, the previous hearings before the domestic commissioner and the trial court concerned the application, of the Post-Separation Family Violence Relief Act, and little-if any evidence was taken regarding the factors to determine the best interest of the child found in La. C.C. art. 134.
La. C.C. art. 134 provides that the court “shall consider all relevant factors in determining the best interest of the child,” which factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child, love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing,, medical care, and other material needs.
(4)The length of time the child has lived in a stable, adequate, environment, and the desirability of maintaining continuity of that environment. •
b(5) The permanence, as a family unit, of the existing or* proposed custodial home or homes.
(6) The' moral fitness of each party, insofar as it affects the welfare of the child.
(7).The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child,’if-the court deems the child to be of sufficient age to express a preference,
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other ’ party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Robertson v. Robertson, 10-926 (La.App. 5 Cir. 4/26/11), 64 So.3d 354, 362-63; Robert v. Robert, 44,528 (La.App. 2 Cir. 8/19/09), 17 So.3d 1050, 1052, writ denied, 09-2036 (La.10/7/09), 19 So.3d 1. These factors are not exclusive, but are' provided as a. guide to the court, and the relative weight given to each factor is left , to the discretion of *404 the trial court. Robertson, supra; Martinez, supra.
Upon review, we find that Dr. Van Beyer’s custody evaluation, which the trial court relied on extensively in its July 30, 2015 ruling, did in fact consider many of the Article 134 factors in determining the best interest of the child. In preparing her evaluation, Dr. Van Beyer noted that she reviewed various documentary evidence and also conducted multiple interviews with the parties, Mrs. Manley, Aali-jah, and Mrs. Beauford (Ms.' Coleman’s grandmother), with whom Ms.' Coleman and Aalijah have resideá. The report noted that except for the brief time when the domiciliary custody was with Mr. Manley, the child had presided with her mother her entire life. Dr. Van Beyer was apprised of the acts of family violence that gave rise to these proceedings, and while she did not exonerate Ms. Coleman or excuse her from those two incidents, she implicitly found that Mrs. Manley’s presence at those two exchanges was provoking to some degree, and recommended that Mrs. Manley not be present at any future custody exchanges, a recommendation that the trial court ultimately made part of his judgment.
Dr. Van Beyer found that Aalijah was a well-adjusted child who had a strong and positive relationship with both parents and her step-parent, and that both parents were able and willing to provide a loving home environment, but that she. had a primary attachment to her mother. She also found that Mr, Manley discounted Aa-lijah’s primary attachment to her mother, believing that his. wife could fulfill Aalijah’s needs in that regard, a conclusion with which Dr. Van Beyer obviously disagreed.
Dr. Van Beyer also found that Ms. Coleman had facilitated Aalijah’s visitation with Mr. Manley during the child’s entire life, even before Mr. Manley was able to be stationed in Louisiana, and that such facilitation had enabled Aalijah to have a close relationship with her father despite her young age and the physical distance in their homes. Contrarily, she found that Mr. Manley had tried to gain sole custody of Aalijah since the parties ended their relationship, even refusing to return the child to Ms. Coleman when she brought the child to him for visitation in Kentucky, where he lived at the time. His refusal to return the child to Ms. Coleman or let her see the child necessitated Ms. Coleman’s filing of formal custody proceedings in Louisiana in 2008, which are a part of this record and which resulted in the child being returned to Ms. Coleman.
1^Further, despite Mr. Manley’s claim in brief, no evidence was presented that Ms. Coleman’s cousin had convictions for possession of a sawed-off shotgun or a drug conviction. Ms. Coleman’s grandmother, Mrs. Beauford, testified at the January 15, 2015 hearing that she was aware that her grandson had a “criminal conviction” and that he had stayed with her from time to time. No evidence was presented that he lived permanently in the house or that he was or had ever been a danger to the child. Likewise, no evidence was offered regarding Aalijah’s grades and school attendance at either home. In its July 30, 2015 judgment, the trial court accepted almost all of Dr. Van Beyer’s recommendations.
In conclusion, we find that Dr. Van Beyer’s report, rendered following multiple interviews with the parties and extended family, and with full knowledge of the incidents of family violence, sufficiently considered the relevant Article 134 factors. Based on the record before us, we find no abuse of the trial court’s great discretion in finding it was in the child’s best interest that Ms. Coleman be designated as domi *405 ciliary parent. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR

Relocation

In his final assignment of error, Mr. Manley argues that the trial court committed legal error by allowing the relocation of the minor child to New Orleans without notice of relocation, a motion to relocate, or consideration of the relocation factors as per La. R.S. 9:355.4 and La. R.S. 9:355.11. This issue was not before, the trial court at either the January 15, 2015 or the July 31, 2015 hearings. As such, this issue is not properly before this Court on appeal.
In any event, a review of the factors for applicability of the requirements to relocate a child’s primary residence, found in La. R.S. 9:355.2, show that the proceedings before the trial court were a change in custody, rather than a relocation |1BaS contemplated by these statutes. Accordingly, it is doubtful that the relocation statutes actually apply to the facts of this case.
La. R.S. 9:355.2(B)(3) provides that the requirements apply to a proposed relocation of a child’s primary residence where there is a court order awarding custody and there is an intent to establish the principal residence of a child at any location within the state that is at a distance of more than seventy-five miles from the principal residence of the child at the time ■that the most recent custody decree was rendered. In finding that this is not a true relocation as contemplated by the statutes, we note that during the pendency of the current proceedings, Ms. Coleman has always lived in the metropolitan New Orleans area and Mr. Manley has resided in Leesville, communities that are- more than 75 miles apart. Ms. Coleman’s motion to change custody did not seek to “establish” the child’s primary residence, if the motion were granted, to a location different from where Ms. Coleman has always resided with the child when she had domiciliary custody. A review of relevant case law shows that these statutes apply when a ' custodial parent seeks' to establish a new residence which is more than 75 miles from that parent’s prior residence where custody was previously exercised. This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, we affirm the trial court’s July 30, 2015 judgment that granted the parties joint custody of the minor child and designated Ms. Coleman as domiciliary parent, subject to specific periods of physical custody in favor of Mr. Manley, including holiday and summer vacation custody schedules.

AFFIRMED

. Mr. Manley was deployed to Korea for two years (from when Aalijah was 4½ years old to the time she was 6½ years old), and to Afghanistan for six months (from May to December of 2014).

. On April 17, 2014, Ae trial court provided written reasons for sustaining Mr. Manley’s objection to the domestic commissioner’s denial of- his rule to modify custody and relocate.

. The transcript of Ae hearing that day ends with Ae judge’s statement Aat he was going into recess and would come back and rule. However, Aere is no further transcript of that day in Ae record. Ms. Coleman maintains that Ae custody award was temporary; Mr. Manley alleges in brief Aat it was a "considered decree.” As noted, however, Ae order is not included in this record, nor is there a transcript of such ruling.

.Mr. Manley's violation of Ais part of Ae unmemorialized order was the subject of a motion for contempt filed by Ms. Coleman, which Ae trial court granted, finding Aat Mr. Manley violated the order by picking the child up three days early.

. Following the July 31, 2014 court appearance, three judgments were issued. The first one, filed on August 22, 2014, awarded Mr. Manley domiciliary custody and unsupervised visitation privileges to Ms.. Coleman. This judgment, however, was immediately vacated in favor of an "Amended Judgment” filed on August 28, 2014, that stayed all custody matters pending Mr. Manley’s deployment, but awarded unsupervised visitation privileges to Ms. Coleman as specified and other matters. Finally, a “Corrected Judgment” was filed on September 8, 2014, specifically superseding the two previous judgments. This judgment stayed-all custody matters pending Mr. Manley’s return from military deployment, awarded Ms. Coleman specified unsupervised visitation privileges, and specified the location of the exchanges.

. For ease of analysis, we address the assignments of error in an order different from that presented by Mr. Manley.

. Mr. Manley also argues in brief that Ms. Coleman failed to present evidence, as required by the same statutes, that she was not abusing alcohol or using illegal drugs. However, the record is devoid of any evidence or allegation that Ms. Coleman ever abused alco-hoi or illegal drugs or that such substance abuse was an issue in this case,

; Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).

. • As previously noted, the record is. devoid of any order on or about this date changing domiciliary custody of Aalijah to Mr. Manley.